# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12bk29926 |
|  | ) | Chapter 13 |
| Lea Deidre Wilson, | ) |  |
|  | ) | Honorable Bruce W. Black |
| Debtor. | ) |  |
| ———————————————————— | ) |  |

## MEMORANDUM DECISION

This dispute concerns the intersection of the automatic stay under the Bankruptcy Code[1]

and the sale of property for non-payment of real estate taxes under the Illinois Property Tax

Code, 35 ILCS 200/1-1 *et seq*. The Debtor has not participated in the contest. Two creditors have

filed motions for retroactive relief from the automatic stay. A third creditor asks prospective

relief from the stay and a declaration that actions by the state court were void. The ultimate

purchaser has moved to intervene and supports the retroactive relief from the stay. For the

reasons below the court concludes that retroactive relief from the stay is appropriate.

## I.    Background

The following facts are not in dispute. On July 30, 2012, Lea Deidre Wilson (the Debtor)

filed a petition for bankruptcy relief under chapter 13 of the Bankruptcy Code. The Debtor's

Schedules include the real property at 1223 E. 85th Street, Chicago, IL (the Property). The

schedules list the Property at $107,000, subject to a secured claim of $10,000. The Debtor also

states in her Schedules that the Property is "encumbered by a $64,000 mortgage from

---

[1] 11 U.S.C. § 101 *et seq*. Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless
another reference is stated.

CitiMortgage not in debtor's name – sold for tax debt 9/15/10." (Dkt. 1, Schedule A). According to the Debtor's Modified Plan, confirmed on January 22, 2013, the Debtor intended to sell the Property by March 20, 2013 and use the non-exempt proceeds to help fund her Chapter 13 plan. The Debtor did not sell the Property, and according to the parties' briefs the Debtor merely vacated the Property at some point. The issue here is the ownership of the Property.

### A. CitiBank

The Debtor acquired her interest in the Property from Louella Wilson through a quit claim deed dated November 30, 2007 and recorded on December 13, 2007. Previously, on or about September 11, 2007, Louella Wilson had encumbered the Property with a mortgage in favor of CitiBank, N.A. ("CitiBank"), and the Debtor took the Property subject to the mortgage. According to CitiBank, the last payment it received on the mortgage was on April 22, 2011. As a result, CitiBank filed a foreclosure suit against both the Debtor and Louella Wilson in the Circuit Court of Cook County, Illinois. That suit was ultimately dismissed on December 21, 2011 for want of prosecution. CitiBank never moved to vacate the dismissal or to refile its foreclosure suit.

Even though CitiMortgage was incorrectly listed as the mortgagee on the Debtor's Schedules, CitiBank did in fact receive notice of the bankruptcy filing as it was also listed as a "Creditor Holding Unsecured Non-Priority Claims" on the Debtor's Schedule F due to an Overdraft Account.

The Debtor's confirmed plan did not provide for CitiBank as a secured creditor. As a consequence, Citibank was treated as an unsecured creditor. CitiBank did file a proof of claim, but it was filed on December 27, 2012, after the claims bar date. Consequently, the Chapter 13

Trustee objected to CitiBank's proof of claim, and on July 16, 2013 the court disallowed the claim in full.

### B. Gothic/Goliath

In 2008 the Debtor failed to pay real estate taxes on the Property, and on September 15, 2010 the Debtor's 2008 delinquent tax debt was sold to Gothic Investment, LTD ("Gothic"). Under the Illinois statute the redemption date was set as July 2, 2013. On January 10, 2013 Gothic filed a petition for a tax deed with the Illinois circuit court. Gothic served both the Debtor and CitiBank with the required Take Notices. The Notice informed the parties that the tax debt was bought by Gothic, that the redemption date was July 2, 2013, and that the matter was set for hearing on August 2, 2013. It also informed the parties that title to the Property would transfer if the Property were not redeemed and urged the parties to redeem. Neither the Debtor nor CitiBank redeemed by the redemption date.

On August 2, 2013 the state court scheduled an evidentiary hearing to determine whether the tax deed should be issued. That hearing was held on August 13, 2013, and no one appeared to oppose Gothic. After a brief evidentiary hearing, the matter was taken under advisement. On August 21, 2013 the state court entered an Order Directing County Clerk to Issue Tax Deed and for Other Relief. On September 4, 2013, Gothic's Tax Deed was recorded. Gothic then sold the property to Goliath Corporation ("Goliath") on March 28, 2014. Goliath's warranty deed from Gothic was recorded on April 8, 2014. According to Goliath's briefs, Goliath then spent about $85,000 renovating the Property. After the renovations, Goliath sold the property to Roslyn Harris ("Harris") on October 23, 2014, who recorded the warranty deed on November 18, 2014.

Harris has taken out two mortgages on the Property, and, by all indication, she currently resides there.

### C. Case at Hand

Despite admitting in her schedules that the Property was "sold for tax debt 9/15/10," the Debtor's schedules only list the Cook County Collector as the creditor to whom the tax debt is owed. (Dkt. 1). The Schedules did not list Gothic as a creditor, and, according to the briefs, Gothic did not learn of the bankruptcy until a dispute arose between Gothic and CitiBank over CitiBank's mortgage in March of 2015.

After learning of the bankruptcy, Gothic filed the present Motion to Annul Stay asking for this Court to annul the automatic stay, *nunc pro tunc*, to the date of filing. Goliath has filed its own Motion to Retroactively Annul the Automatic Stay and for Other Relief which requests that this court retroactively annul the stay to the date of filing of the petition, and to ratify the state court issuance of the tax deed to Gothic, Gothic's transfer to Goliath, and Goliath's transfer to Harris. CitiBank has filed a Motion to Declare Tax Deed Void and for Relief from the Automatic Stay. Finally, Harris brought a Motion to Intervene in Addition to Motion for Leave to File Memorandum in Support of Motion to Annul Stay and in Opposition to Petition to Declare Tax Deed Void.

The four motions have been consolidated here, and for the following reasons Gothic's motion will be granted, Goliath's motion will be granted, CitiBank's motion will be granted in part and denied in part, and Harris's motion will be denied as moot.

## II.    Jurisdiction

This court has subject matter jurisdiction under 28 U.S.C. § 1334(a)and Internal

Operating Procedure 15(a) of the District Court for the Northern District of Illinois. Pursuant to

28 U.S.C. § 157(b)(1), the bankruptcy judge presiding over a referred case has jurisdiction to

enter appropriate orders and judgments in "core proceedings" within the case. Because the

motions now before the court deal with the automatic stay, they are core proceedings under 28

U.S.C. § 157(b)(2)(G), and this court may enter final orders.

## III.    Discussion

### A. The Automatic Stay

Section 362(a) of the Bankruptcy Code provides that a petition filed under Title 11

operates as a stay of:

> (1) the commencement or continuation, including the issuances or employment of
>
> process, of a judicial, administrative, or other action or proceeding against the
>
> debtor that was or could have been commenced before the commencement of the
>
> case under this Title, or to recover a claim against the debtor that arose before the
>
> commencement of the case under this Title[.]

11 U.S.C. § 362(a)(1).

Section 362(a) provides for a broad stay of litigation against the debtor. The automatic

stay is a self-executing provision of the Code and begins to operate nation-wide, without notice,

once a debtor files a petition for relief. *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 988

5

(Bankr.E.D.Va.1986), *aff'd*, 839 F.2d 198 (4th Cir.1988), *cert. denied*, 487 U.S. 1260, 109 S.Ct.

201, 101 L.Ed.2d 972 (1988).

The automatic stay under § 362 is one of the most basic protections afforded a debtor by

the Bankruptcy Code. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977), reprinted in

1978 U.S.Code Cong. & Admin.News, 5787 at 5890 & 6296–6298. By stopping creditors'

collection efforts against a debtor's property, the debtor is granted a "breathing spell" from

creditor pressure. *Id.* The stay also protects creditors by curtailing a "race to the courthouse,"

preventing the piecemeal liquidation of debtor's estate in favor of fair and equal treatment of

creditors, and preserving "going concern" value. *Id.* Acts done in violation of the automatic stay

ordinarily are void *ab initio*. *See Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984); *In re

Benalcazar*, 283 B.R. 514, 526 (Bankr. N.D.Ill. 2002); *In re Halas*, 194 B.R. 605, 614 (Bankr.

N.D.Ill. 1996).

The Code also authorizes the courts to terminate, annul, modify or condition the stay.

§ 362(d). Such relief from stay must be granted for cause. § 362(d)(1). "'Cause' as used in

§ 362(d) 'has no clear definition and is determined on a case-by-case basis.'" *Matter of

Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (citing *In re Tuscan Estates*,

912 F.2d 1162, 1166 (9th Cir. 1990)). Alternatively, relief shall be granted if "(A) the debtor

does not have an equity in such property; and (B) such property is not necessary to an effective

reorganization[.]" § 362(d)(2).

Here, Gothic, Goliath, and CitiBank agree that the automatic stay was in effect when

Gothic received the Tax Deed and during the subsequent transfers to Goliath and Harris. The

parties also agree that relief from stay is warranted because the Debtor has no interest in the

6

Property and, due to the fact that the Debtor vacated the Property, the Property is not necessary for an effective reorganization. The parties disagree, however, as to when relief from stay should be granted. CitiBank argues that the automatic stay voids the issuance of the Tax Deed and the subsequent transfers, and therefore relief should only be granted prospectively to allow the parties to pursue their respective claims in state court. Gothic and Goliath argue that because of the lack of notice of the bankruptcy case, the amount of time that has passed, and the events that have transpired, they, and Harris, would be unfairly prejudiced by having to go back to state court. Rather, they argue, relief should be granted retroactively, thereby validating all the events that have transpired.

### B. Retroactive Relief

Principles of equity support the granting of retroactive relief from the automatic stay whenever a creditor without actual knowledge of the stay would be unfairly prejudiced if the debtor could raise the stay as a defense. *In re Lipuma*, 167 B.R. 522, 525 (Bankr.N.D.Ill.1994); *In re Confidential Investigative Consultants, Inc.*, 178 B.R. 739, 751 (Bankr.N.D.Ill.1995). Courts have used a variety of factors to determine whether "cause" exists to retroactively annul the automatic stay. These factors include:

(1)   whether creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the automatic stay;

(2)   whether the debtor acted in bad faith;

(3)   whether there is equity in the property of the estate;

(4)   whether the property is necessary for an effective reorganization;

7

(5)   whether grounds for relief from stay existed, such that a motion for stay relief, if filed, would likely have been granted prior to the automatic stay violation;

(6)   whether failure to grant retroactive relief will cause unnecessary expense to the creditor;

(7)   whether the creditor has detrimentally changed its position on the basis of the action taken;

(8)   whether the creditor took some affirmative action post-petition to bring about violation of stay;

(9)   whether the creditor promptly seeks retroactive lifting of stay and approval of action taken;

(10)   whether issues in the case involve only state law, so that expertise of the bankruptcy court is unnecessary;

(11)   whether modifying stay will promote judicial economy and whether there will be greater interference with the bankruptcy case if the stay is not lifted because matters will have to be litigated in bankruptcy court;

(12)   whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court;

(13)   the number of bankruptcy filings by the debtor;

(14)   extent of any prejudice, including to a bona fide purchaser;

(15)   the debtor's compliance with the Bankruptcy Code;

(16)   how quickly the creditor moved for annulment; and

(17)   how quickly the debtor moved to set sale aside[.]

*In re Wapotish*, No. 07 B 71218, 2009 WL 1916965, at *2 (Bankr. N.D.Ill. July 2, 2009) (collecting authority). "This list is not exhaustive and, in any case, one factor may outweigh the others as to be dispositive." *Id* (citation omitted). Out of the seventeen factors presented in *Wapotish*, factors 2, 12, 13, 15 and 17 are inapplicable here. The rest favor Gothic/Goliath, and will be examined in turn.

1.    Factor 1) Actual or Constructive Knowledge of the Bankruptcy Filing

Gothic and Goliath both claim that they had no knowledge of the bankruptcy case until sometime after the Tax Deed was issued and the property had been transferred multiple times. In response, CitiBank claims that had Gothic made a diligent inquiry into who should have received a "Take Notice" Gothic would have been able to discover the Debtor's bankruptcy, and thereby would have had notice. The critical inquiry here is whether Gothic knew or should have known of the bankruptcy at the time of the automatic stay violation.

To answer this question, the Court must first determine at what point the violation of the automatic stay took place. In this regard, the Court is persuaded by the reasoning in *In re Bates* that found that under § 363(a) "a tax purchaser plainly is prohibited from . . . applying to the state court for an order directing the issuance of a tax deed, and appearing at a hearing on the application." *In re Bates*, 270 B.R. 455, 467 (Bankr. N.D.Ill. 2001) (citations omitted). At the same time, however, "not all of the steps necessary to obtain the deed are prohibited." *Id*. at 469. The provisions of § 363(b)(3) of the Code provide an exception to the automatic stay for the perfection of a security interest. The initial filing of a petition for a tax deed and the notices of the expiration of the redemption period are not violations of the automatic stay because they are steps necessary to maintain the tax purchaser's property interest. *Id*. Therefore, the August 13,

9

2013 state court hearing to determine the issuance of a tax deed was the first time that Gothic's action violated the automatic stay, and Gothic's knowledge at that point will be determinative.

The Illinois Property Tax Code requires that three notices be served; notice of the tax sale, notice of the redemption period's termination date, and notice of the petition. 35 ILCS 200/22-15 through 22-30. Service of these notices is required on all owners and parties in interest that are discovered after diligent inquiry. *Id.* Gothic argues that it had made the proper service on both the Debtor, as the property owner, and CitiBank, as a party in interest. Goliath points out that at the August state court hearing Gothic had notified the state court that Gothic had ordered a tract search from Ridge Title Agency, which by all indication did not reveal a bankruptcy. Goliath also points out that while the 2011 Tax Warrant Book did include the Debtor's bankruptcy, the 2011 Tax Warrant Book was not published until August 27, 2013, so it would not have been available to Gothic at the time of the hearing. (Dkt. 77, p. 4, fn. 1).

CitiBank, on the other hand, argues that had Gothic done a routine search that tax purchasers should do, then Gothic would have discovered the bankruptcy filing. CitiBank submitted (as exhibit CB-1 to its Memorandum in Support of its motion) the search that it ran, which clearly includes the Debtor's bankruptcy. (Dkt. 73, Ex. CB-1). As a result, CitiBank claims that 1) an evidentiary hearing will be required to determine if Gothic complied with the provisions of the Illinois Property Tax Code, and 2) had a proper search been conducted, the bankruptcy filing would have been discovered.

No such hearing is required. First, there already was a hearing on August 13, 2013, conducted by the Circuit Court of Cook County. This hearing no doubt included an examination of Gothic's compliance with the Illinois Property Tax Code notice requirements. The state court

determined that everything was proper for the issuance of a tax deed and then issued the tax deed. It is not the place of this court to question the state court's judgment.

Second, and more importantly, the requirements of the Illinois Property Tax Code are to conduct a diligent inquiry to find all owners and parties in interest to the Property. Such a search may, but does not necessarily, result in a finding of a bankruptcy. Such a search would find the owners, like the Debtor, and parties in interest, like CitiBank, and by all indication Gothic's search did find these parties, and these parties were served with the proper notices. Gothic would have had to do an additional search to these parties to further ascertain whether there was a pending bankruptcy. Nothing required Gothic to do so, and there is no evidence that Gothic did do the additional search and merely ignored its findings.

Finally, one can assume that where a search does not reveal a bankruptcy filing, the debtor/property owner would notify the tax purchaser of such a filing after the debtor receives the proper notice from the tax purchaser. Both the Debtor and CitiBank were made aware of the petition for the issuance of tax deed as early as January of 2013. They had almost seven months to inform Gothic of the bankruptcy and to stay the state court proceeding. Neither party did that. It would be inequitable for CitiBank to ask to void an action two years after it occurred when it could have potentially prevented the action from occurring.

There are several ways to search for owners and parties in interest, and perhaps some of those other ways would have resulted in the discovery of bankruptcy petition. Nevertheless, based upon the state court's finding, there was nothing wrong with the search that Gothic conducted, even though that search did not discover the bankruptcy. This court will not second guess or question the findings of the state court on that. Accordingly, without evidence to the

11

contrary, this court finds that Gothic did not have any notice of the bankruptcy and that its search

for parties in interest was reasonable.

2.     Factors 3) Equity in the Property, 4) Necessity for an Effective Reorganization, and 5)

       Stay Would Have Been Granted

       Gothic and CitiBank agree the Debtor does not have equity in the Property and the

Property is not necessary for an effective reorganization, so these issues are not in dispute.

       The Court does note that at some point the Property may have been necessary for an

effective reorganization and that relief from stay may not have been warranted. The confirmed

plan called for the sale of the Property by March 30, 2013 and the use of the non-exempt

proceeds to fund the Chapter 13 plan. (Dkt. 17; 33). However, March 30, 2013 passed and no

sale had occurred. Moreover, based upon the testimony at the state court hearing in August, 2013

the Property appeared to have been vacant for some time. (Dkt. 62, Ex. I). Finally, the Debtor

has not appeared or challenged these proceedings in any way. All this leads the Court to

conclude that the Property was not, and is not, necessary for an effective Reorganization, the

Debtor lacks equity in the Property, and that stay would have been granted at the time of the

automatic stay violation had it been requested then.

3.     Factors 6) Whether Lack of Retroactive Relief will cause Unnecessary Harm to Creditor,

       and 14) Extent of Prejudice

       CitiBank argues that if retroactive relief is denied and the tax deed is voided, Gothic

would not be unfairly prejudiced and will merely have to prove its case again in state court.

Moreover, Gothic may be able to recoup some of its losses by obtaining an order declaring a sale

in error. Conversely, CitiBank argues that it will be severely prejudiced as it will most likely lose

the ability to enforce its own mortgage. However, this court concludes that Gothic and Goliath would suffer the greater harm if the stay is not lifted.

First, having to again prove up its right to a tax deed would result in significant costs to Gothic, costs that it has already incurred. Gothic would be forced to relinquish its rights under 35 ILCS 200/22-45, Tax Deed Incontestable Unless Order Appealed or Relief Petitioned, and 35 ILCS 200/22-55, Tax Deeds to Convey Merchantable Title. Furthermore, given the strict deadlines set in the Illinois Property Tax Code, it is not clear whether Gothic's right to a tax deed would have lapsed by now. If it has, Gothic would have lost its investment in the Property. Moreover, Gothic points out that since the tax debt was purchased, Gothic, then Goliath, and Harris, have been responsible for paying the property taxes on the Property. Finally, Gothic would be liable to Goliath for any damages. Goliath, in turn, would be liable to Harris.

Second, a sale in error order would not recuperate all these costs. If a sale in error occurs, the county clerk is required to make an entry that the sale of the tax debt occurred erroneously, and the tax purchaser's money is refunded. 35 ILCS 200/21-310(d). However, reimbursement is not possible after one year following the expiration of the redemption period. 35 ILCS 200/22-85. This period is tolled for any period of time in which the tax purchaser is prevented from obtaining a deed because of an injunction or court order. *Id*. Therefore, CitiBank is correct that Gothic can recoup some of the costs of its investment, but those costs only include purchase costs and interest, not the extra costs associated with the sale of the Property to Goliath and any claims by Goliath and Harris.

Third, as discussed above, Gothic, Goliath, and Harris would be highly prejudiced by a failure to annul the stay. Apart from the costs that Gothic would bear for maintaining the

13

property and the costs that Goliath would bear for remodeling the property, there is also the possibility that Harris would lose her residence. It has been two years since the issuance of the tax deed, and in that time there have been two sales of the property, the last being to a private individual. All these facts combine to demonstrate significant prejudice to Gothic and Goliath if the retroactive relief is not granted.

Finally, CitiBank argues that it will be irreparably harmed if Gothic is granted retroactive relief. CitiBank states that "at least Citibank 'played by the rules.' Unlike Gothic, Citibank took no action in violation of the stay to enforce its mortgage rights." (Dkt. 73, p. 11). Although CitiBank did not violate the automatic stay, it also "took no action" to protect its rights as well. As Gothic and Goliath point out, CitiBank could have taken a plethora of actions to protect its rights. For example, it could have:

1) proceeded with its state foreclosure prior to the bankruptcy instead of letting it be dismissed for want of prosecution;

2) filed a new foreclosure action prior to the bankruptcy filing;

3) filed a motion for relief from stay in the bankruptcy case;

4) objected to Debtor's plan when Debtor failed to include CitiBank in the plan;

5) timely filed a proof of claim in the bankruptcy;

6) notified the bankruptcy court of Gothic's action when it received notice of Gothic's petition for issuance of tax deed, or notified Gothic of the bankruptcy;

7) timely redeemed the Property from Gothic; and

14

8) objected and appeared at the state court hearing in August, 2013.

CitiBank could have done any of these things, yet it did none of them. Therefore, while it is true that CitiBank never violated the automatic stay, it is not prejudicial to deny CitiBank a "ninth bite at the apple."

Accordingly, this court concludes that failure to annul the stay would greatly prejudice Gothic and Goliath and would have no unfair impact on Citibank.

4.    Factor 7) Whether the Creditor has Detrimentally Changed its Position on the Basis of the Action Taken

This has already been touched upon earlier, but bears repeating here. Gothic has detrimentally changed its position by acting under the reasonable belief that it had a valid tax deed. It maintained the Property and paid the taxes when the Debtor could not or would not. Moreover, it sold the property and issued a warranty deed under the same belief that its tax deed was valid. Similarly, Goliath also took detrimental action when it spent a substantial sum of money remodeling the property and then sold it, by warranty deed, to Harris.

5.    Factor 8) Whether Creditor Took Some Affirmative Action Post-Petition to Bring About Stay Violation

It is clear that Gothic did take affirmative steps to bring about the stay violation; scheduling and conducting a hearing for the issuance of a tax deed. Nonetheless, because Gothic had no knowledge of the bankruptcy and the automatic stay this factor has very little, or no, weight.

6.    Factors 9) Whether the Creditor Promptly Seeks Retroactive Relief, and 16) How

Quickly Creditor Moved for Annulment

By all accounts Goliath and Gothic first learned of the bankruptcy from CitiBank in

March of 2015. Goliath states that it "first became aware that the Debtor had filed for bankruptcy

in March 2015 when counsel for Citibank, the mortgagee for the 85th Street Property, advised

Goliath of his belief that the tax deed was void." (Dkt. 62, p. 4). Gothic only states that it "has

just been approached by the Bank, through counsel, who demanded Gothic pay its former

mortgage, which is how Gothic learned of the bankruptcy." (Dkt. 53, p. 3). Gothic's motion was

filed on April 29, 2015. Goliath filed its motion on May 1, 2015. Thus there was less than two

months between notice of the bankruptcy and motions for retroactive relief. Given the

complexities of this case, that appears to be an appropriate amount of time for the parties to get

counsel, review documents, draft and file motions, and still be prompt in their request.

7.    Factors 10) Whether Issues in the Case involve only State Law so that Expertise of

Bankruptcy Court is Unnecessary, and 11) Judicial Economy

The issues here, as raised by CitiBank, are the status and validity of Gothic's tax deed

versus CitiBank's mortgage. Absent the bankruptcy, such issues are entirely within the realm of

the state courts. Moreover, there already had been a state court ruling on this matter. CitiBank

also had every opportunity to participate in that case but did not. The issues have been resolved

in state court, and no appeal was taken. Therefore, this is an issue entirely involving the

application of state law, and it is in the interest of judicial economy for this court and the state

court that retroactive relief be granted.

## IV.    Conclusion

With the exception of the eighth factor, all the applicable considerations are in favor of Gothic and Goliath for retroactive stay relief. They have shown that they acted without knowledge of the automatic stay and that they would be unfairly prejudiced if it were not retroactively lifted. *See In re Lipuma*, 167 B.R. at 525; *In re Confidential Investigative Consultants, Inc.*, 178 B.R. at 739. Accordingly, Gothic and Goliath's motions are granted. CitiBank's motion to declare the tax deed void is denied. CitiBank has proven that it is entitled to prospective relief from the stay, and that portion of CitiBank's motion is granted to allow CitiBank to pursue whatever rights it may have in state court. Finally, having granted Gothic and Goliath's motions, and thereby validating the tax deed and the subsequent transfers, Harris's motion to intervene is unnecessary and therefore is denied as moot. Separate orders will be entered.

DATED: August 26, 2015

Bruce W. Black
United States Bankruptcy Judge